# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA MARIE FOUNTAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-87-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Angela Marie Fountain requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 3, 1980, and was thirty-two years old at the time of the administrative hearing (Tr. 42). She completed the twelfth grade, and has worked as a retail sales clerk, stocker, and personal care aide (Tr. 28, 197). The claimant alleges that she has been unable to work since April 1, 2007, due to a back injury, arthritis, depression, and a bulging disc (Tr. 196).

## Procedural History

On October 27, 2010, the claimant applied for benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 23, 2012 (Tr. 20-30). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could only perform unskilled work (which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision was simple, direct, and concrete.

He further stated that interpersonal contact with co-workers needed to be incidental to the work performed (*e. g.*, assembly work), and that she was to have no contact with the general public. Additionally, he found that she must be allowed to alternately sit and stand throughout the workday (Tr. 24). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economy that she could perform, *i. e.*, merchandise marker, label coder, and routing clerk (Tr. 29).

## Review

The claimant contends that the ALJ erred: (i) by failing to find she had the additional severe impairments of bursitis and "urinary problems"; (ii) by improperly rejecting the opinions of claimant's treating physician, Dr. William Willis, and consultative examiner, Dr. Robert Spray; (iii) by disregarding compelling medical opinions to arrive at an improper RFC; and (iv) by finding she could perform work at step five based on an improper RFC. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The medical evidence reveals that the claimant had the severe impairments of obesity, osteoarthritis/degenerative disc disease of the back, and affective mood disorder, as well as the nonsevere impairments of urinary incontinence and frequent urination (Tr. 22-23). With regard to her mental impairments, the claimant was first evaluated by Dr. Dr. Theresa Horton, Ph.D., on December 7, 2010 (Tr. 305). The claimant reported no previous mental health treatment (Tr. 306). Dr. Horton noted that the claimant presented

with a recent history of suicidal ideation with no plans or intentions, and that her mood was predominately depressed (Tr. 308). The claimant rated her mood at a three on a scale of one to ten, and Dr. Horton noted that her affect was congruent, expressive, and tearful (Tr. 308). As to sensorium and cognition, Dr. Horton indicated that the claimant's recall was below average but other memory appeared intact, that she had adequate concentration, and adequate fund of information, and average intelligence, as well as fair insight (Tr. 308). Dr. Horton assessed her with major depressive disorder, recurrent, severe, as well as Axis III diagnosis of chronic pain, bulging discs, and ovarian cysts (Tr. 308). As to the claimant's prognosis, Dr. Horton indicated that the claimant was not receiving adequate mental health care, and encouraged her to discuss depression medications with her treating physician. Continuing, Dr. Horton stated, "She appears capable of understanding, remembering and managing simple and complex instructions and tasks. Social and emotional adjustment will likely be difficult at this time as she attempts to cope with pain and her difficulty with access to healthcare, though likely will improve with treatment . . . She likely adapts adequately in small familiar social settings" (Tr. 309).

State reviewing physician Joy Kelley, Ph.D., completed a Psychiatric Review Technique Form on June 22, 2011, finding that the claimant had mild degrees of limitation in activities of daily living and maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace (Tr. 388). Noting the claimant's untreated depression, Dr. Kelley found that the claimant was having emotional and social difficulties as she attempted to cope with her physical pain, but that she was

able to perform simple and some, but not all, more complex tasks (Tr. 390). Dr. Kelley then completed a Mental RFC assessment, finding that the claimant was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact with the general public (Tr. 392-393). She concluded that the claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation (Tr. 394).

The claimant began receiving treatment at Carl Albert Community Mental Health Center in September 2011, where she was placed on a medication management plan with monthly reviews (Tr. 452-459, 502-503).

On May 30, 2012, the claimant's representative sent her to consultative examiner Robert L. Spray, Jr., Ph.D. for a psychological evaluation (Tr. 494). He noted that her affect was appropriate and variable, and that she seemed depressed and described her mood as such (Tr. 496). He administered a mental status exam, noting that, *inter alia*: (i) she was oriented to time, place, and person; (ii) she made three errors doing serial 3s; (iii) she knew her personal identifying information, but not the main theme of the book of Genesis or who invented the electric light bulb; (iv) she had an estimate average IQ; (v) she was cooperative with the assessment (Tr. 495-496). His Axis I diagnostic impression was major depression and post-traumatic stress disorder, with a global assessment of functioning score of 40-50 (Tr. 497).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors

in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ erred with regard to the opinions of both Dr. Horton and Dr. Spray. The ALJ provided a summary of Dr. Horton's report, but did not provide any analysis of her findings and prognoses (other than to reject her observation that the claimant had difficulty rising and sitting in a chair, because she was a psychological examiner rather than a physical examiner). This was important because Dr. Horton repeatedly pointed out concerns about the claimant's ability to adjust socially, and found she would only adequately adjust "in small familiar social settings" (Tr. 309). Furthermore, he concluded that Dr. Spray's opinion was "entitled to neither controlling weight nor significant evidentiary weight" because: (i) his opinion was not based on a longitudinal relationship, (ii) his opinion was largely based on the claimant's self-reports, and (iii) "most importantly" his opinion was not well supported by medically acceptable

clinical and diagnostic techniques and was inconsistent with the other substantial medical evidence of record (including his treating physician's treatment notes). Nevertheless, he fails to explain how a general practitioner would be more authoritative than a trained mental health practitioner, and how the claimant's treating physician notes were at odds with Dr. Spray's report, in light of the treating physician's deference to the claimant's mental health treatment (Tr. 449-451). *See Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are."). The ALJ also neglected to mention evidence that was consistent with Dr. Horton and Dr. Spray's opinions, *e. g.*, treatment notes reflecting continued reports and treatment for chronic pain which the state reviewing physician noted contributed to her mental health difficulties (Tr. 390).

Because the ALJ failed to discuss evidence that was inconsistent with his RFC determination, *i. e.*, Dr. Horton's opinion that the claimant would struggle in most occupational settings and Dr. Spray's consultative examination, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is

therefore not supported by substantial evidence.  The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

    **DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**